BERLIN ET, PLAINTIFFS, *v.* KILPATRICK ET, COUNTY COMMISSIONERS, ETC., DEFENDANTS.

Common Pleas Court, Trumbull County.

No. 67753.   Decided December 3, 1958.

*Messrs. Reed S. Battin, George B. Woodman & Edw. F. Welsh,* for plaintiffs.

*Mr. Charles Anderson,* county prosecutor, and *Mr. J. Don Campbell,* assistant county prosecutor, for defendants.

BIRRELL, J. Before the commencement of the hearing in this case a Motion was made that the Defendant, William C. Trimbur, as County Auditor, and defendants, Jean P. Blair, Peter J. Snyder, Frank Cicelli and George Howe, as members of the Board of Elections, be dismissed. This Motion was continued at that time for further consideration. The Court finds that under the Statutes there are no duties incumbent upon either of these parties as such officers in the proceedings sought to be carried out by the people who have filed the petitions for creation of a new township in the present Liberty Township outside of the cities of Girard and Youngstown. The Motion is therefore granted. This leaves the three Trumbull County Commissioners as the only Defendants in this Action brought by the members of the Board of Trustees of Liberty Township as individuals. The Court does not find that these individuals, as Trustees of Liberty Township, in their official capacity, have any standing in this case, and it must therefore proceed as if the three Plaintiffs, Myron Berlin, Cecil Chubb and Clyde V. Hellman are bringing the action as individuals or as taxpayers.

Certain freehold electors of Liberty Township have filed their petitions with the Trumbull County Board of County Commissioners praying to have the territory of said township outside of the cities of Girard and Youngstown, erected in to a new township.

The Plaintiffs allege that false and untrue representations were made to induce the signing of said petitions. The only evidence in this respect shows that a public meeting was held wherein statements were made with reference to the effect that the erection of a new township, outside of the limits of the cities, would have upon the income of the new township as compared with that of the present Township. Such evidence is not sufficient in the Court's mind to substantiate the allegations that false and untrue representations were made to induce the signing of said petitions.

An allegation was made that since the original signing

certain of the resident freeholders have requested that their names be removed from the petitions. The evidence indicates that there have been a number of signers who have requested that their names be deleted and that such signers have signed application for the removal of their names. These applications are on file with the County Commissioners, and it appears that the Defendant Commissioners will consider such applications and determine therefrom whether or not a "majority of the freehold electors owning land in the portion of such township outside such city limits have petitioned for the erection of such new township." The exhibits filed with the County Commissioners include letters from various persons requesting the Commissioners to with-hold their determination in this matter for the sole purpose of permitting those opposed to the petitions to attempt to secure sufficient of the signers thereof to withdraw their names. While the with-holding of the determination by the Commissioners may appear to be giving the opposers more opportunity to prosecute their opposition, yet apparently under this particular section of the Revised Code the Statutes do not anywhere indicate or fix any particular time or method or any manner of preventing the signers of the petitions from withdrawing their names, if they so desire, up until the date on which the County Commissioners act upon the Petitions.

The most recent decisions of our Supreme Court on this subject are summed up in the 2nd Syllabus of the case of *Lynn* v. *Supple*, 166 Ohio St., 154:

"In the absence of statutory provisions to the contrary, an elector signing a referendum petition authorized by law has a right to withdraw his name from such petition at any time before official action has been taken thereon and before an action in mandamus has been properly commenced to compel the taking of such action, although after the time within which such petition is required by law to be filed and after it actually has been filed."

This decision is approved and followed at

*State, ex rel.* v. *Wellington*, 166 Ohio St., 166; *State, ex rel.* v. *Board Ed.*, 166 Ohio St., 260, and *Lumber Co,* v, *Flick,* 79 Ohio Law Abs., 119.

See, also, earlier cases of *Dutten* v. *Village of Hanover*, 42 Ohio St., 215 and *Hays* v. *Jones*, 27 Ohio St., 218.

To the date of hearing of this matter in this Court it appears that sufficient names still remain upon the petitions herein considered, but of course this Court cannot fortell what may occur before this matter is determined by the County Commissioners.

Further allegation is made that numerous names are not signed as they appear upon the list of registered voters in and for Trumbull County. No evidence was presented on this point except that one "I, Thomas Savage," testified that he did not sign his name but that it was signed by his wife who owns one-half interest in their property. And likewise there was testimony by John Jordan that possibly perhaps a half dozen names may have been signed by the respective wives of the named parties. This testimony with reference to possibly seven signatures will, no doubt, be taken into account by the County Commissioners upon their hearing. This comparatively slight number is not considered sufficient to condemn the large number of freehold electors who properly signed the petition. It must be remembered that the burden of proof rests upon the Plaintiffs in this case to prove allegations of their petition by a preponderance of the evidence. In this hearing it is not for this Court to determine whether these signatures are valid or invalid. After all, the duty would rest on the County Commissioners of Trumbull County, to determine by whatever reasonable means they adopt, whether a majority of freehold electors of Liberty Township have signed or have not signed these petitions. It would appear to the Court that the County Commissioners have a right to rely upon the members of the Board of Election to determine who are and who are not electors of this particular portion of Liberty township, and to rely also upon the County Auditor to report the number of freeholders therein. The method, however, of determining these matters may well be left to the discretion of the Board of County Commissioners, subject to appeal, as provided by law, if desired by anyone who becomes dissatisfied with the Commissioners decision.

Plaintiffs likewise failed to prove that the petitions were

circulated and caused to be signed in violation of law. The Statute in this case does not require the circulators of these petitions to take an oath that they circulated the petitions or saw the signers affix their names to the petitions.

With reference to the foregoing matters the Court does not find anything wrong with these petitions which have been filed with the Board of County Commissioners nor does he find any cause to determine that the Board of Commissioners should not continue with the hearing in this case, with reference to these particular complaints.

There is, however, the more important question as to the sufficiency of Section 503.09, Revised Code, in this particular matter which question was ably argued at the hearing of this case.

The Statute in accordance with which these petitions have been prepared is Section 503.09, Revised Code, which reads as follows:

"Petition to erect new township excluding territory of cities.

"Where a township contains a city, if a majority of the freehold electors owning land in the portion of such a township outside such city limits, petitions, with a map accurately setting forth such territory, praying to have such territory erected into a new township, and excluding the territory within the city, the board of county commissioners shall enter an order erecting such territory into a new township, the boundaries of which need not include twenty-two square miles of territory. Upon the erection of such new township, the territory lying within the limits of the city in the original township shall be considered as not being located in any township."

This Statute is applicable "where a Township contains a city * * *." The question arises whether this Statute applies in this particular case.

This Statute occurs in Chapter 503 of "Title V" entitled "Townships," of the Revised Statutes of the State of Ohio, which substantially provides the method of Organization, Officers and the authority in township affairs.

Title V commences with Chapter 501, entitled "Originally surveyed Townships." It is unnecessary to further refer to

Chapter 501 except to understand that when the State of Ohio was established there was a time when the original townships were surveyed and regulations were necessary for these "Originally Surveyed Townships."

Chapter 503 goes forward with the organization of the townships and, specifically, in this particular part of the chapter, with the method of changing boundaries of the originally surveyed townships. In order to orient ourselves let us first notice that Section 503.01, Revised Code, is entitled "Incorporation of Civil Townships, Corporate Powers" which is not necessarily of further interest here. It continues with Section 503.02, Revised Code entitled "Civil Townships designated or boundaries changed," which reads as follows:

"The Board of County Commissioners may change the boundaries of any civil township, or partition any township among other townships within the county, by attaching a part of one township to another, by dividing one township and attaching the parts to other townships, or by laying off and designating a new township from the territory of one or more townships of the same county or from territory not before included in a civil township, when it is made to appear necessary or expedient by a petition for that purpose, signed by a majority of the householders residing within the bounds of the townships to be affected by such partition or division."

It will be noted that the Board of County Commissioners is the authority in whom the power to change the boundaries of a civil township is placed.

Section 503.03, Revised Code, as to area and funds of Townships reads as follows:

"No township shall be laid off containing less than twenty-two square miles, or have its boundaries so changed as to reduce its territory below that quantity, unless it includes a municipal corporation, except as provided by Sections 503.09 to 503.13, inclusive, Revised Code. In case of division or partition of a township, the funds in the treasury thereof shall be apportioned to the townships to which portions thereof are attached, or to the new townships established, to the extent they are collected from such territory."

Section 503.04, Revised Code, provides for "Notice of hear-

ing; record of boundaries"; Section 503.05, Revised Code, "Adjustment of disputed boundaries," Section 503.06, Revised Code, "Marking township boundary lines." Section 503.07, Revised Code, "Conformity of boundaries."

"If the limits of a municipal corporation do not comprise the whole of the township in which it is situated, or if by change of the limits of such corporation include territory lying in more than one township, and the legislative authority of such municipal corporation, by a vote of the majority of the members of such legislative authority, petitions the board of county commissioners for a change of township lines in order to make them identical, in whole or in part, with the limits of the municipal corporation, or to erect a new township out of the portion of such township included within the limits of such municipal corporation, the board, on presentation of such petition, with the proceedings of the legislative authority authenticated, at a regular or adjourned session, may change the boundaries of the township or erect such new township."

Section 503.08, Revised Code, "Disposition of remainder of township:"

"In making a change of boundaries as provided by Section 503.07, Revised Code, if any township not having a municipal corporation within its limits is reduced in territory to less than twenty-two square miles, it may thereupon be annexed by the board of county commissioners to any contiguous township, or the board may annex thereto territory from a contiguous township and erect a new township. If a majority of the householders of such reduced township, outside the limits of a municipal corporation, petition for such annexation, the board may erect such reduced township into a new township.

This brings us to Section 503.09, Revised Code, which has been copied at the commencement of this portion of this Opinion and which I now desire to discuss, comparing the expressions of the Legislature in the various Statutes copied above.

The foregoing sections have been a part of our Statutory law since early days. Some of them have been amended at various times as the need for amendment became apparent. They are designed to vest in the Board of County Commissioners the power to alter the limits of the original townships when

circumstances occur as therein set forth. We naturally understand that the division of the State into Counties and Townships was done for the purpose of the assignment and enforcement of governmental powers and the orderly conduct of elections. Naturally, also, no part of the state was exempted from inclusion in this system. It will be noted also that nowhere before the enactment of Section 503.09, Revised Code, were the Commissioners authorized to exempt any portion or area of the state from inclusion in the limits of a township.

Likewise it should be noticed that in only two instances were the commissioners dependent for their authority upon the wishes of the inhabitants of such townships, which instances are mentioned in Sections 503.02 and 503.08 above. The authority in Section 503.02, Revised Code, was apparently designed for use in the earlier days when there was territory in the state of Ohio which had not been assigned to or incorporated into an originally surveyed township. The authority in Section 503.08, Revised Code, was designed "if any township not having a Municipal Corporation within its limits is reduced in territory to less than twenty-two square miles * * * (when) a majority of the householders of such reduced township * * * petition for * * * annexation * * * etc."

In the year 1935 a House Bill (116 O. L., 197) was passed amending the then Section 3246, General Code (Now Section 503.03, Revised Code), and enacting sections then known as Sections 3250-1 to 3250-5, General Code (which in the present Revised Code became Sections 503.09 to 503.13, inclusive, Revised Code). Reference to Section 503.09, Revised Code, above shows that such section was designed for a specific situation to-wit "where a township contains a city * * * (and), a majority of the freehold electors owning land in the portion of such township outside of such city limits * * * petition * * * to have such territory erected in to a new township, excluding the territory within the city * * *." This new law also provided "Upon the erection of such new township, the territory lying within the limits of the city in the original township shall be considered as not being located in any township." Among the various matters which should be observed are that for the first time in Ohio history except before the Original Townships

were surveyed, it is provided that certain portions of land may be "considered as not being located in any township" if the Commissioners grant the petition.

Our important matter is that such a petition may be filed only "where a township contains a city." The City of Youngstown mentioned in the petition, of course, is not entirely contained in the township of Liberty, and the City of Girard is not entirely contained within the township of Liberty. Consequently we are confronted in this suit for a declaratory judgment with the problem of advising the Defendant Board of County Commissioners whether or not they may proceed under the terms of this Statute.

The word "contained" according to Websters dictionary means "to hold within fixed limits; to enclose; to hold as contained within four walls; hence to comprise; include."

It is the duty of the Court to assume that the Legislature used the words in the Statute in their normal sense. In this very chapter the Legislature had referred in Section 503.07, Revised Code (above set forth) to cities as follows: "If the limits of a Municipal Corporation do not *comprise* (emphasis is added to call attention to certain words or phrases considered noticeable) the whole of the township in which it is situated," thus indicating that they recognize that there might be instances where the city might not cover the entire township. In Section 503.08, Revised Code, it refers to another situation with the words "if any township not having a municipal corporation *within its limits.*" In Section 503.03, Revised Code (former Section 3246, General Code, which was amended at the same time as Section 503.09, Revised Code, was enacted) uses the words "*unless it includes* a municipal corporation." Knowing how carefully the General Assembly had designated the instances wherein the Board of County Commissioners had authority to alter the boundaries of townships, it is apparent that the Legislature advisedly used the word "*contained*" in Section 503.09, Revised Code (a new word in this chapter), with the purpose presumably of restricting the jurisdiction of the Board of Commissioners to situations only where the city was "contained" within the township.

That the Legislature definitely intended to restrict this

particular authority to a particular type of situation is further indicated by the fact that their law (116 O. L., 197) originally read "where a township contains a city or cities." It did not intend apparently to include situations where the township contained Villages, although it knew the difference between the meaning of the words "city," "cities," and the meaning of the term "municipal corporation" which it had carefully used in the previous sections.

A case in point which decides the meaning of the word "contains" is *State* v. *Clark* (Nebraska) reported at 188 N. W., 472, 473, wherein the phrase "contains a consolidated school district" used in certain Nebraska Statutes is held to mean a "consolidated district which is *completely contained* within the proposed new district."

Other cases are cited at 9 Words and Phrases 18, 19, which refer generally to the definition in Websters Dictionary as above set forth.

16. A. Corpus Juris Secundum, p. 1250, refers to other cases which decide the meaning of the word "contains" as follows:

*Adirondack Records* v. *Lawrence,* 193 N. Y. S., 122, 127 "to have for its contents."

*Thorp* v. *Aetna Ins. Co.* (N. H.), 72 A., 690, 691, horses in a pasture ordinarily kept in a barn are not "contained in" a barn unless there at the time of the loss.

*Re Kilborn's Will* (N. Y.), 2 N. Y. S. 2d, 896, 899, "included in" is synonymous with "contained in"—does not mean "a portion of."

In the interpretation of this and related sections of our Statutes, our Ohio Attorneys General have adhered to strict construction and at Opinion No. 1743 of the 1958 Attorney General's Opinion has defined the word "include" as used in Section 503.03, Revised Code, which is referred to by Webster's Dictionary as a synonym of "contain," to mean

"to confine; shut up; enclose, as the nut shell includes the kernel."

Likewise, at 1954 O. A. G. number 4642 (p. 648) he strictly construes the requirements of the Statutes 503.07 and 703.22, Revised Code, providing when residents of a municipal corporation may no longer vote for township officers. And at

1955 O. A. G. number 5422 (p. 304), he also strictly construes the provisions of Sections 503.07 and 503.08, Revised Code, wherein householders of a reduced township may petition for the erection of a new township. At 1937 O. A. G. number 849 (p. 1532), a strict construction is given of the term "freehold electors."

While the Opinions of the Attorneys General are not binding upon, or precedents for, the Common Pleas Court, those particular Opinions are here referred to as an example of the strictness which is considered necessary by the Attorneys General of the State of Ohio in advising the officials of the State and of its Counites and Townships with reference to the construction of the laws enacted by our Legislature. They suggest to this Court that where liberal construction might be desired in dealing with this Statute, it would be better to leave the determination of the extent of such liberality to the higher reviewing Courts which are in better position to indulge in determining how far the Legislature's intention may depart from the generally accepted meaning of their carefully chosen words.

For the benefit of the Petitioners the Court would be happy to hold that the word "contained" merely means that "when a portion of a city is included within a township." But the Court is not permitted to Amend the Statute by construction. It is only where there is an ambiguity or a clear case where some apparently contrary statements are made that a Court may presume to construe the expressions of the Legislature. When no ambiguity exists and no doubtful words are used the Court must accept the words which the Legislature has adopted. *Slingluff* v. *Weaver*, 66 Ohio St., 621, 2 Syl.

"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

It is therefore this Court's recommendation to the De-

402

fendant Board of County Commissioners that the Statute (Section 503.09, Revised Code), is not broad enough to permit them to "erect a new township out of the territory in Liberty township excluding the territory occupied by the Cities of Girard and Youngstown.

The costs of this Declaraotry Judgment must be borne by the Plaintiffs.